UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| FLEETWOOD SERVICES, LLC, ET AL., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| VS. ) | |
| ) | 3:17-CV-2272-G |
| COMPLETE BUSINESS SOLUTIONS ) | |
| GROUP, INC. d/b/a PAR FUNDING, ) | |
| ET AL., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Before the court are two motions to transfer venue filed by the defendants Complete Business Solutions Group, Inc. d/b/a Par Funding ("CBSG") and Prime Time Funding LLC ("Prime Time") (docket entries 10 and 18). For the reasons set forth below, the motions are granted.

## I. BACKGROUND

Three plaintiffs, Fleetwood Services, LLC, Robert L. Fleetwood, and Pamela A. Fleetwood (collectively, "the Fleetwood plaintiffs") brought this action against two defendants, CBSG and Prime Time. *See* Plaintiffs' Original Petition ("Original

Petition") at 1 (docket entry 1-5). Two of the Fleetwood plaintiffs, Robert L. Fleetwood and Pamela A. Fleetwood, are natural persons residing in Dallas, Texas. *Id.* ¶¶ 4-5. The third plaintiff, Fleetwood Services, LLC, is a Texas limited liability company with its principal office in Dallas, Texas.[1] *Id.* ¶ 3. By contrast, CBSG is a corporation organized under the laws of the Commonwealth of Pennsylvania, and Prime Time is a limited liability company organized under the laws of Pennsylvania, without any Texas owners or members. Notice of Removal ¶¶ 8-9 (docket entry 1).

This case revolves around the defendants' allegedly predatory lending practices. *See* Original Petition ¶ 9. According to their Original Petition, "[the Fleetwood plaintiffs] . . . were victimized by a predatory merchant cash advance lender and its respective broker, who intentionally and systematically took advantage of [them] at a time when [Fleetwood Services, LLC] was experiencing cash-flow issues." *Id.* The Fleetwood plaintiffs claim the defendants' predatory behavior led to significant financial hardship and "tremendous emotional and mental distress." *Id.* ¶ 29.

On July 28, 2017, the Fleetwood plaintiffs filed suit against the defendants CBSG and Prime Time in the 192nd Judicial District Court for Dallas County, Texas. Notice of Removal ¶ 1. In their Original Petition, the Fleetwood plaintiffs

---

[1] Nothing in the parties' submissions suggests that Fleetwood Services, LLC has owners or members who reside outside of the state of Texas.

claimed that the defendants' conduct constituted (1) a violation of the Texas Theft Liability Act (Original Petition ¶¶ 31-34), (2) fraud in the inducement (Original Petition ¶¶ 35-39), (3) negligent misrepresentation (Original Petition ¶¶ 40-44), (4) intentional infliction of emotional distress (Original Petition ¶¶ 45-47), and (5) civil conspiracy (Original Petition ¶¶ 48-49).

On August 25, 2017, the defendants removed the case to this court on the basis of diversity of citizenship. Notice of Removal ¶ 5. Shortly thereafter, on September 6, 2017, CBSG filed a motion under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1404(a) seeking transfer of the case to the Eastern District of Pennsylvania. Defendant Complete Business Solutions Group, Inc.'s Motion to Transfer Venue; Defendant Complete Business Solutions Group, Inc.'s Brief in Support of Motion to Transfer Venue ("CBSG's Brief") (docket entry 11). In its motion, CBSG contends that transfer is appropriate because a clause found in the parties' "Factoring Agreement" specifies the Eastern District of Pennsylvania as the appropriate forum for any dispute arising from the parties' business dealings. *See* CBSG's Brief at 1-3.

On September 14, 2017, Prime Time filed a similar motion to transfer. Defendant Prime Time Funding, LLC's Motion to Transfer Venue (docket entry 18); Defendant Prime Time Funding, LLC's Brief in Support of Motion to Transfer Venue ("Prime Time's Brief") (docket entry 19). In addition to echoing CBSG's arguments

in support of transfer to the Eastern District of Pennsylvania, Prime Time also contends that "[t]o the extent the [c]ourt is not inclined to transfer this case as requested . . ., the [c]ourt [should] dismiss this case pursuant to FED. R. CIV. P. 12(b)(6) because [the Fleetwood plaintiffs] commenced this proceeding in Texas in violation of the forum selection clause." Prime Time's Brief at 13-14.

On September 27, 2017, the Fleetwood plaintiffs filed a timely response to CBSG's motion. Plaintiffs' Response in Opposition to Defendant Complete Business Solutions, Group, Inc.'s Motion to Transfer Venue ("Response") (docket entry 23); Plaintiffs' Brief in Support of Response in Opposition to Defendant Complete Business Solutions Group, Inc.'s Motion to Transfer Venue ("Response Brief") (docket entry 23-1). In their response, the Fleetwood plaintiffs maintain that the forum-selection clause in the "Factoring Agreement" is, at best, permissive rather than mandatory, and, more likely, its ambiguity precludes enforcement. Response Brief at 5. To date, the Fleetwood plaintiffs have not filed a response directly addressing Prime Time's motion. The defendants' motions are now ripe for decision.

## II. ANALYSIS

### A. Legal Standard

#### 1. *The Interplay Between 28 U.S.C. § 1404(a) and Forum Selection Clauses*

28 U.S.C. § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to

any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). According to well-established Supreme Court and Fifth Circuit precedent, § 1404 "should be regarded as a federal judicial housekeeping measure, dealing with the placement of litigation in the federal courts and generally intended, on the basis of convenience and fairness, simply to authorize a change of courtrooms." *In re Rolls Royce Corporation*, 775 F.3d 671, 677 (5th Cir. 2014) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 636-37 (1964)) (internal quotations omitted), *cert. denied*, __ U.S. __, 136 S. Ct. 45 (2015). After all, "[t]he purpose of Section 1404(a) is to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Santander Consumer USA, Inc. v. Homer Skelton Enterprises, Inc.*, 3:17-CV-0568-G, 2017 WL 3492228, at *2 (N.D. Tex. Aug. 15, 2017) (Fish, Senior J.) (quoting *Van Dusen*, 376 U.S. at 616) (internal quotations omitted).

As a general matter, "[i]t is well-settled that the party moving for a change of venue bears the burden of demonstrating why the forum should be changed." *Dupre v. Spanier Marine Corporation*, 810 F. Supp. 823, 825 (S.D. Tex. 1993) (citing *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir. 1966)). Placing the burden on the moving party to show "good cause" for the transfer "reflects the appropriate deference to which the plaintiff[s'] choice of venue is entitled." *In re Volkswagen of America, Inc.*,

545 F.3d 304, 315 (5th Cir. 2008) (en banc), *cert. denied*, 555 U.S. 1172 (2009). Unless the transferee district is "clearly more convenient," the plaintiffs' choice of venue should be respected. *Id.*

"The preliminary question under § 1404(a) is whether a civil action might have been brought in the destination venue." *Id.* at 312 (internal quotations omitted). This requires a finding that the transferee court has jurisdiction over the defendant and venue in the transferee district would be proper. *Frost v. ReliOn, Inc.*, No. 3:06-CV-0822-G, 2007 WL 670550, at *2 (N.D. Tex. Mar. 2, 2007) (Fish, Chief J.). Once this threshold inquiry is surmounted, "[i]n the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas*, __ U.S. __, 134 S. Ct. 568, 581 (2013).

The list of private factors district courts consider when evaluating the propriety of a § 1404(a) motion -- considerations the Supreme Court describes as "private interest factors" -- includes the "relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive." *Weber v. PACT XPP Technologies, AG*, 811 F.3d

758, 766-67 (5th Cir. 2016) (quoting *Piper Aircraft Company v. Reyno*, 454 U.S. 235, 241 n.6 (1981)) (internal quotations omitted).[2] With respect to public factors, district courts generally consider "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* (quoting *Piper Aircraft*, 454 U.S. at 241 n.6). Ultimately, "[t]he decision to transfer a pending case is committed to the sound discretion of the district court." *Santander*, 2017 WL 3492228, at *2.

The presence of a valid forum-selection clause in the parties' contract significantly alters the analysis. See *Weber*, 811 F.3d at 767. In a diversity case such as this, federal law governs the enforceability of forum-selection clauses. *Stewart Organization, Inc. v. Ricoh Corporation*, 487 U.S. 22, 32 (1988); *Ginter ex rel. Ballard v. Belcher, Prendergrast & Laporte*, 536 F.3d 439, 441 (5th Cir. 2008). Under federal law, if the forum-selection clause at issue is clear, mandatory, and enforceable, the plaintiffs' choice of forum "merits no weight" and, instead, the plaintiff bears the burden of establishing that § 1404(a) transfer is unwarranted. *Weber*, 811 F.3d at

---

[2] Although the Supreme Court's decision in *Piper Aircraft* involved a *forum non conveniens* analysis, the Court clarified in *Atlantic Marine* that "[s]ection 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system." *Atlantic Marine*, 134 S. Ct. at 580. Thus, the private and public factors the district court considers are the same whether the court faces a motion to dismiss on the basis of *forum non conveniens* or a motion to transfer the case pursuant to § 1404(a).

767 (citing *Atlantic Marine*, 134 S. Ct. at 581-82); see also *Calix-Chacon v. Global International Marine, Inc.*, 493 F.3d 507, 513 (5th Cir. 2007) ("'[A] valid forum selection clause is given controlling weight in all but the most exceptional cases.'" (quoting *Stewart*, 487 U.S. at 33 (Kennedy, J., concurring))).

A party who seeks to overcome the presumption of enforceability must carry the heavy burden of demonstrating that enforcement of the forum-selection clause would be unreasonable under the circumstances. *Mitsui & Company (USA), Inc. v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) (citing *M/S Bremen v. Zapata Off-Shore Company*, 407 U.S. 1, 10 (1972)). Enforcement of a forum-selection clause is unreasonable under the circumstances only if: (1) "the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching;" (2) litigation in the selected forum would be gravely inconvenient; (3) the "fundamental unfairness of the chosen law" would deprive the plaintiff of a remedy; or (4) enforcing the clause would violate a strong public policy. *Haynsworth v. The Corporation*, 121 F.3d 956, 963 (5th Cir. 1997) (citing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991), and *M/S Bremen*, 407 U.S. at 12-13), *cert. denied*, 523 U.S. 1072 (1998). Also, in such cases, district courts should not consider the aforementioned private interest factors. "Because the parties have contracted for a specific forum, they 'waive the right to challenge their preselected forum as

inconvenient . . . .'" *Weber*, 811 F.3d at 767 (quoting *Atlantic Marine*, 134 S. Ct. at 582).

But proceeding with the analysis above presupposes the existence of a mandatory and unambiguous forum-selection clause. Cf. *Atlantic Marine*, 134 S. Ct. at 581 n.5. "Depending upon the wording of the clause, courts have categorized forum selection clauses as 'permissive' or 'mandatory' in nature or, in some instances have found the terms of a clause too ambiguously worded to enforce." *LeBlanc v. C.R. England, Inc.*, 961 F. Supp. 2d 819, 828 (N.D. Tex. 2013) (Boyle, J.); see also *Weber*, 811 F.3d at 768 ("We first decide, *de novo*, whether the [forum-selection clause] is mandatory or permissive. Our caselaw recognizes a sharp distinction between mandatory and permissive [forum-selection clauses].").

A mandatory forum-selection clause provides that all litigation must be conducted in a specified forum. *LeBlanc*, 961 F. Supp. 2d at 828 (citing *UNC Lear Services, Inc. v. Kingdom of Saudi Arabia*, 581 F.3d 210, 219 (5th Cir. 2009), *cert. denied*, 559 U.S. 971 (2010)). Mandatory forum-selection clauses "go beyond establishing that a particular forum will have jurisdiction and [ ] clearly demonstrate the parties' intent to make that jurisdiction exclusive." *Id.* (quoting *UNC Lear*, 581 F.3d at 219). By contrast, although permissive forum-selection clauses authorize venue in a designated forum, they do not prohibit litigation elsewhere. *Id.*; see also *Von Graffenreid v. Craig*, 246 F. Supp. 2d 553, 561 (N.D. Tex. 2003) (Kaplan, M.J.)

(discussing the types of clauses courts have deemed permissive rather than mandatory).

"When the terms of a forum selection clause are neither clearly mandatory nor permissive, but instead ambiguous in nature, the court applies principles of contract law to discern the parties' intent, if possible." *LeBlanc*, 961 F. Supp. 2d at 828 (citing *Caldas & Sons, Inc. v. Willingham*, 17 F.3d 123, 127 (5th Cir. 1994)). Generally, a forum-selection clause is ambiguous "where [the clause's] language cannot be given a definite legal meaning and is reasonably susceptible to more than one interpretation." *Id.* (quoting *Von Graffenreid*, 246 F. Supp. 2d at 558). If a court determines that the forum-selection clause is ambiguous, settled principles of contract law dictate that the court should construe the clause against the drafting party. *Id.* (citing *Caldas & Sons*, 17 F.3d at 127).

In sum, when a court considers whether to transfer a case pursuant to a § 1404(a) motion and the contract governing the parties' dispute contains a forum-selection clause, the analysis proceeds as follows. First, the court's threshold consideration in any § 1404(a) analysis is whether the civil action might have been brought in the transferee court. *Santander*, 2017 WL 3492228, at *2. Second, assuming the court decides that threshold question in the affirmative, the court then evaluates whether the clause in question is mandatory, permissive, or ambiguous, applying principles of contract law as necessary. See *LeBlanc*, 961 F. Supp. 2d at 828.

In some instances the parties will not dispute this second issue as the contractual language makes clear that the forum-selection clause is mandatory rather than permissive. In other cases, however, the resolution of this issue might be outcome determinative. Third, if the court concludes that the forum-selection clause is mandatory, then the clause is presumptively enforceable and, to prevent transfer, the party opposed to the motion must meet its "heavy burden" to demonstrate that enforcement of the clause would be unreasonable under the circumstances. See *Mitsui & Company*, 111 F.3d at 35. If the court concludes that the clause is permissive, however, the court embarks on a typical § 1404(a) analysis and, to succeed on its motion, the party moving for a change of venue must satisfy its burden to demonstrate why the forum should be changed. See *Dupre*, 810 F. Supp. at 825. Alternatively, if the court concludes that the clause is genuinely ambiguous, principles of contract law indicate that the court must construe the clause against the drafting party. *LeBlanc*, 961 F. Supp. 2d at 828. The analysis following a court's conclusion of ambiguity depends on case-specific considerations such as which party drafted the contract, and which party seeks enforcement of the clause.

B. Application

1. *The Forum Selection Clause*

Paragraph 4.5 of the parties' "Factoring Agreement," the source of the purported forum-selection clause, provides the following:

- 11 -

> 4.5 **Binding Effect; Governing Law, Venue and Jurisdiction.** This Agreement shall be binding upon and inure to the benefits of [Fleetwood Services, LLC], [CBSG] and their respective successors and assigns, except that [Fleetwood Services, LLC] shall not have the right to assign its rights hereunder or any interest herein without the prior written consent of [CBSG] which consent may be withheld in [CBSG's] sole discretion. [CBSG] reserves the rights to assign this Agreement with or without prior written notice to [Fleetwood Services, LLC]. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regards to any applicable principals of conflicts of law. *Any suit, action or proceeding arising hereunder, or the interpretation, performance or breach hereof, shall, if [CBSG] so elects, be instituted in any court sitting in Pennsylvania, (the "Acceptable Forums").* [Fleetwood Services, LLC] agrees that the Acceptable Forums are convenient to it, and submits to the jurisdiction of the Acceptable Forums and waives any and all objections to jurisdiction or venue. Should such proceeding be initiated in any other forum, [Fleetwood Services, LLC] waives any right to oppose any motion or application made by [CBSG] to transfer such proceeding to an Acceptable Forum.

Plaintiff's Appendix of Evidence in Support of Response in Opposition to Defendant Complete Business Solutions Group, Inc.'s Motion to Transfer Venue ("Response Appendix") at 16 (docket entry 23-2) (emphasis added).

### 2. *The Parties' Contentions*

According to CBSG, the language in paragraph 4.5 constitutes a valid and enforceable forum-selection clause. CBSG's Brief at 4. In CBSG's view, "[b]ecause a valid forum-selection clause exists and no extraordinary circumstances are present in this case [to render enforcement of the forum-selection clause unreasonable], transfer

of this case to the U.S. District Court for the District for the Eastern District of Pennsylvania is appropriate." *Id.* at 5. Similarly, in its motion to transfer, Prime Time argues that "a valid forum selection clause exists between [the parties], presenting no unusual case that would preclude the enforcement of its provisions." Prime Time's Brief at 10.

In response, the Fleetwood plaintiffs contend that the relevant portions of paragraph 4.5 represent "at best" a permissive forum-selection clause, and are "more likely too ambiguous to enforce." Response Brief at 2. Specifically, the Fleetwood plaintiffs maintain that the clause in question does not include a "mirror-image requirement imposed upon other parties, like the Fleetwoods, to institute their lawsuits against . . . CBSG only in Pennsylvania." *Id.* at 4. Because the Fleetwood plaintiffs filed their suit in Texas rather than Pennsylvania, they argue, paragraph 4.5 is simply inapplicable. *Id.* Alternatively, the Fleetwood plaintiffs argue that the final sentence of paragraph 4.5 is ambiguous and renders the forum-selection clause unenforceable. *Id.* at 5.

3. *Interpreting the Forum-Selection Clause*

As set forth above, the threshold question in a § 1404(a) analysis is whether the civil action might have been brought in the transferee court. *Santander*, 2017 WL 3492228, at *2. Here, because the Fleetwood plaintiffs do not dispute the fact that this case could have been brought in the Eastern District of Pennsylvania, the court

answers this preliminary inquiry in the affirmative.  The next question for the court to consider is whether the forum-selection clause in this case is mandatory, permissive, or ambiguous.  See *LeBlanc*, 961 F. Supp. 2d at 828.  While the Fleetwood plaintiffs provide arguments on this question, neither CBSG nor Prime Time explicitly address the issue.  *See* Response Brief at 2-3.

In this case, it appears the parties either overtly or impliedly rely on one of two possible interpretations of the forum-selection clause.  The key sentence in paragraph 4.5 is "[a]ny suit, action or proceeding arising hereunder, or the interpretation, performance of breach hereof, shall, if [CBSG] so elects, be instituted in any court sitting in Pennsylvania, (the "Acceptable Forums")."  Response Appendix at 16.  By arguing that this portion of the "Factoring Agreement" applies to potential litigation filed by the Fleetwood plaintiffs, CBSG and Prime Time interpret the clause "if [CBSG] so elects," as a one-way ratchet.  In other words, the defendants ask the court to first read the forum-selection clause without the phrase "if [CBSG] so elects." Taking that phrase out of the sentence, the meaning of the forum-selection clause becomes quite clear: "Any suit, action or proceeding arising hereunder, or the interpretation, performance of breach hereof, *shall* [ ] be instituted in any court sitting in Pennsylvania." *Id.* (emphasis added).  The inclusion of the word "shall" indicates a mandatory, rather than permissive, contract provision, and a plain reading of the clause, in the absence of the phrase "if [CBSG] so elects," makes clear that it

applies to CBSG and Fleetwood Services, LLC equally.  See *UNC Lear*, 581 F.3d at 219 ("Mandatory forum selection clauses that require all litigation to be conducted in a specified forum are enforceable if their language is clear.").  It appears that as the drafter, CBSG included the phrase "if [CBSG] so elects" to provide itself with more flexibility in formulating future litigation strategy.  The Fleetwood plaintiffs read the forum-selection clause differently.  In their view, the inclusion of the phrase "if [CBSG] so elects" indicates that the sentence applies only to suits filed by CBSG.  According to the Fleetwood plaintiffs, "[p]aragraph 4.5 merely gives Defendant CBSG the right to elect to have a lawsuit instituted in any court in Pennsylvania."  Response Brief at 4.  Because the Fleetwood plaintiffs filed their case in Texas, they argue, the forum-selection clause is inapplicable.  *Id.*

The court declines to adopt the Fleetwood plaintiffs' strained reading of the forum-selection clause.  Because the plain meaning of the text in the parties' contract supports the defendants' interpretation, the court concludes that the clause is mandatory.  The court also rejects the Fleetwood plaintiffs' arguments as to ambiguity.  In their view, the final sentence of paragraph 4.5 renders the entire provision too ambiguous to enforce: "Should such proceeding be initiated in any other forum, [Fleetwood Services, LLC] waives any right to oppose any motion or application made by [CBSG] to transfer such proceeding to an Acceptable Forum."  Response Appendix at 16.  The court acknowledges that interpreting this sentence is

difficult if one accepts the Fleetwood plaintiffs' reading of the forum-selection clause itself.  In their view, the forum-selection clause merely provides a right for CBSG to file in Pennsylvania, and this sentence, a few lines down, purports to apply to suits filed by Fleetwood Services, LLC.  *See* Response Brief at 5 ("The sentence in question refers to 'such proceeding' with the sole antecedent in the prior portion of the paragraph being a reference to lawsuits initiated by CBSG.").  But in adopting the more obvious interpretation of the forum-selection clause, the one relied upon by CBSG and Prime Time, the meaning of the entire paragraph becomes clear.  Because the forum-selection clause only binds the Fleetwood plaintiffs to filing their suits in Pennsylvania -- as mentioned above, the clause "if [CBSG] so elects" relieves CBSG from the requirement to file in Pennsylvania -- in effect, the sentence the Fleetwood plaintiffs rely on to demonstrate paragraph 4.5's ambiguity merely serves CBSG in enforcing the forum-selection clause should Fleetwood Services, LLC attempt to file suit outside of Pennsylvania.

Therefore, because the court concludes that the clause is neither permissive nor ambiguous, the court will enforce the forum-selection clause unless the Fleetwood plaintiffs have met their heavy burden to establish that enforcement of the clause would be unreasonable under the circumstances.  See *Mitsui & Company*, 111 F.3d at 35.  While the Fleetwood plaintiffs' response briefly references "overwhelming public interest[s] at stake" and provides conclusory statements on how it would be "wholly

unfair and unjust" to enforce the forum-selection clause, after reviewing their submission it is quite clear that the Fleetwood plaintiffs were more focused on the alleged permissiveness and ambiguity of the clause than on the unreasonableness of its enforcement. *See* Response Brief at 2. In light of the obvious deficiencies in the Fleetwood plaintiffs' response, the court finds it unnecessary to weigh the various public factors in this case. Because the Fleetwood plaintiffs did not meet their heavy burden to demonstrate that enforcement of the forum-selection clause would be unreasonable under the circumstances, the court grants the defendants' motions to transfer venue of the case to the Eastern District of Pennsylvania.

### III. CONCLUSION

For the reasons stated above, the defendants' motions are **GRANTED**. Pursuant to 28 U.S.C. § 1404(a), this case is hereby **TRANSFERRED** to the **United States District Court for the Eastern District of Pennsylvania**.

**SO ORDERED**.

January 22, 2018.

*A. Joe Fish*
_____
**A. JOE FISH**
**Senior United States District Judge**